# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO.  07-22046-CIV-HUCK/O'SULLIVAN

CURTIS JAMES JACKSON,
p/k/a 50 CENT,

      Plaintiff,

vs.

GRUPO INDUSTRIAL HOTELERO, S.A.,
a Mexican Corporation d/b/a "COCO BONGO"
nightclub, ROBERTO NOBLE, SR.,
and ISAAC HALABE,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION
## TO DISMISS AND MOTION TO STRIKE

      THIS MATTER is before the Court on Defendants' Motion to Dismiss and Motion to Strike (D.E. #17).  In their Motion, Defendants argue that this Court lacks subject matter over the Plaintiff's claims and personal jurisdiction over Defendants.  Additionally, Defendants argue that the case should be dismissed for *forum non conveniens*, and that this Court should strike certain portions of the Complaint because they are immaterial, impertinent, and scandalous.  The Court has considered the arguments made by Plaintiff and Defendants in their legal memoranda and at the hearing on the Motion.  For the reasons stated below, Defendants' Motion is denied.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

      This case involves an action for damages and injunctive relief for violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*; Florida Statutes § 540.08; and common law unfair competition and trademark infringement.

---

[1]At the motion to dismiss stage, the Court accepts all well-pleaded facts as true, and all reasonable inferences therefrom are construed in the light most favorable to the plaintiffs. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1198 n.2 (11th Cir. 2001).  Unless noted otherwise, reference to the facts of the case are as alleged by Plaintiff.

Plaintiff, Curtis James Jackson, known by the moniker "50 Cent," is a well-known recording artist, rap performer, record producer, and actor. Compl. ¶ 5. In addition to Jackson's pursuits in the entertainment industry, he is also the creator of a clothing line marketed under the trademark "G-Unit," which is also the name of the rap and hip-hop group in which Jackson is a member. *Id.* at ¶ 7. Jackson holds several federal trademark registrations on the G-Unit mark for use in entertainment services, pre-recorded music, clothing, publications, and stickers. *Id.* at ¶ 8. Jackson also has two trademark applications for the G-Unit mark pending, relating to use of the mark in non-fiction books, jewelry and watches, magazines and calendars, and travel bags and accessories. *Id.* at ¶ 9. The G-Unit mark is well-known throughout the United States, with Jackson's goods and services exceeding $150 million in sales. *Id.* at ¶ 9.

Defendant, Grupo Industrial Hotelero, S.A. ("GIH"), is a Mexican corporation with its principal place of business in Mexico. *Id.* at ¶ 11. Defendant, Roberto Noble, resides in Cancun, Mexico, and is the majority shareholder of GIH. *Id.* at ¶ 12. Defendant, Isaac Halabe, also resides in Cancun, Mexico and is the General Director/Chief Operating Officer of GIH. *Id.* at ¶ 13. GIH owns a nightclub located in Cancun, Mexico called Coco Bongo, which is managed by both Noble and Halabe. *Id.* at ¶¶ 11-13.

Defendants use the images and likenesses of various celebrities, including 50 Cent and G-Unit, to advertise and promote the Coco Bongo nightclub. *Id.* at ¶ 16. Defendants promotions target United States tourists—who make up more than half of Coco Bongo's customers—by distributing advertisements within the United states, including through the nightclub's official website. *Id.* at ¶¶ 17, 18. Plaintiff alleges that Defendants "knowingly and without authorization," used Plaintiff's image and likeness and the G-Unit mark to "advertise, promote, endorse, and draw attention to the Coco Bongo nightclub." *Id.* at ¶ 24. Specifically, Plaintiff alleges that Defendants used his likeness and the G-Unit mark in one of Coco Bongo's 2007 Spring Break advertisements, which appeared on the nightclub's website from approximately February through April of 2007, and was also distributed on flyers. *Id.* at ¶¶ 25, 26. Additionally, Plaintiff alleges that Defendants, without authorization, used Plaintiff's likeness and the G-Unit mark in a promotional video made available on the nightclub's official webpage and also hosted by other various websites. *Id.* at ¶¶ 28-33.

Plaintiff filed this suit in the Southern District of Florida on August 9, 2007. After some

2

preliminary issues with serving the Defendants in Mexico, a Notice of Service was provided by Plaintiff on June 27, 2008.  D.E. #14.  On July 23, 2008, Defendants filed the instant Motion to Dismiss and Motion to Strike.  D.E. #17.  The Motion has been fully briefed and this Court heard oral argument on the matter on October 2, 2008.

## II.   DISCUSSION

Defendants raise several arguments in their Motion to Dismiss and Motion to Strike. They argue that this Court lacks both subject matter and personal jurisdiction, that the case should be dismissed for *forum non conveniens*, and that this Court should strike certain portions of the Complaint because they are immaterial, impertinent, and scandalous.  The Court addresses each of these arguments in turn.

### A.  Subject Matter Jurisdiction

Plaintiff alleges that this Court has subject matter jurisdiction over this case "pursuant to 15 U.S.C. § 1121 (actions arising under the [Lanham] Act), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), and 28 U.S.C. § 1338(b) (pendent state law claims)."  Compl. ¶ 2.  Plaintiff alleges violations of two provisions of the Lanham Act in his Complaint.  In Count I, Plaintiff alleges trademark infringement in violation of 15 U.S.C. § 1114(1), and, in Count II, he alleges a false designation of origin claim under 15 U.S.C. § 1125(a).  Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs claims, because the alleged violations of the Lanham Act did not occur in the United States, and that an extraterritorial application of the Act would be contrary to Supreme Court and Eleventh Circuit precedent under the facts of this dispute.

In support of their argument, Defendants direct the Court's attention to *Int'l Cafe v. Hard Rock Cafe Int'l*, 252 F.3d 1274 (11th Cir. 2001).  In *Int'l Café*, the plaintiff opened a Hard Rock Café in Lebanon, registered the Hard Rock name, and obtained exclusive rights to the name and logo in Lebanon.  *Id.* at 1276.  The defendant, an American corporation, opened a competing Hard Rock Café about a mile down the road from the plaintiff's.  *Id.*  The plaintiff sued in the Middle District of Florida, alleging trademark infringement under the Lanham Act.  *Id.*  The Eleventh Circuit held that the district court correctly dismissed the plaintiff's complaint for lack of subject matter jurisdiction because the complained of infringement occurred wholly within Lebanon, with the only alleged effects in the United States being the gains of royalties by the

defendant's parent company located in the United States. *Id.* at 1278. The royalties received in the United States, held the court, were not substantial enough to support extraterritorial application of the Lanham Act. *Id.* In reaching its conclusion, the *Int'l Cafe* Court discussed the factors used to determine when the Lanham Act conferred jurisdiction over extraterritorial disputes involving trademark infringement and unfair competition as set out by the Supreme Court in *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952). *Int'l Café*, 252 F.3d at 1278.

 *Bulova* instructs that courts should apply the Lanham Act beyond the United States borders only after determining that: "1) Defendant is a United States corporation; 2) the foreign activity had substantial effects in the United States; and 3) exercising jurisdiction would not interfere with the sovereignty of another nation." *Id.* When considering the *Bulova* factors, the absence of one of the factors might well be determinative, while the absence two is almost certainly fatal. *Id.* Applying the factors to the plaintiff's factual allegations in *Int'l Café*, the Eleventh Circuit found that, although the first factor was satisfied, the "substantial effect" factor was lacking. *Id.* at 1277. Therefore, because the alleged infringement occurred wholly outside of the United States, with only minimal effects within the United States, it would have been improper to apply the Lanham Act to enforce a plaintiff's rights that were unique to Lebanon. *Id.* at 1279.

 Defendants argue that under *Int'l Café* and *Bulova* extraterritorial application of the Lanham Act fails in the present case because Plaintiff has not allege that any of the Defendants are United States citizens or that the violations of the Lanham Act resulted in any "substantial effects" within the United States. Accordingly, Defendants argue that Plaintiff has failed to satisfy either prongs one and two of the *Bulova* test, thus making extraterritorial application of the Lanham Act improper, and therefore divesting this Court of subject matter jurisdiction in this case.

 Defendants' argument might have merit, were Plaintiff seeking an extraterritorial application of the Lanham Act. However, in the present case Plaintiff seeks only domestic enforcement of the Act. In paragraph thirty-eight of his complaint, Plaintiff alleges that the "Infringing Advertisement and Infringing Video . . . have been and are being distributed in interstate commerce in the United States via the internet . . . ." Compl. ¶ 38. In paragraphs sixteen, seventeen, and eighteen, Plaintiff alleges that "Defendants, without permission or

authorization, repeatedly and continuously use the images and likenesses of countless celebrities, trademarks and movies to promote their Coco Bongo nightclub including . . . 50 Cent [and] G-UNIT. . . . [S]ignificantly target[ing] United States tourists in their promotional efforts for the Coco Bongo nightclub . . . by distributing advertisements within the United States, including through its official internet website . . . ." Compl. ¶¶ 16-18.  Additionally, although Plaintiff does not explicitly allege that the infringements occurring in the United States actually harmed him in the United States, this Court, as other courts have done, can infer that the likely "confusion and mistake" or "deception of the general public" complained of by Plaintiff was suffered domestically.[2]  *See e.g.*, *McGraw-Hill Cos. v. Ingenium Techs. Corp.*, 364 F. Supp. 2d 352, 355-56 (S.D.N.Y. 2005) (no application of the Lanham Act extraterritorially where "Plaintiff's allegation is that defendant has violated the Act in the United States  through inappropriate solicitations of customers located within the United States."); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 225 (S.D.N.Y. 2002) (when denying a motion to dismiss a copyright infringement claims where defendants argued substantial effects not properly alleged, the court stated that "[i]t certainly does not take a tremendous logical leap to infer that since United Media alleges that it discovered infringing material on the Miller Features web site . . . it likely did so in its New York offices and therefore any infringement on the part of the Vrooms or Miller Features took place, among other places, within the United States."); *see also TNT USA Inc. v. TrafiExpress*, *S.A. de C.V.*, 434 F. Supp. 2d 1322, 1330 (S.D. Fla. 2006) (Plaintiff's trade reputation affected in the United States where use of trademark alleged to have extended beyond foreign infringer's borders).  Unlike in *Int'l Cafe* and *Bulova*, Plaintiff is not alleging infringements that occurred wholly or even substantially outside the United States.  Rather, Plaintiff has alleged infringements which occurred exclusively and directly within the United States.

Moreover, this is not a case where a plaintiff is seeking enforcement of his foreign trademark rights in a United States court.  Instead, Plaintiff seeks enforcement of his United

---

[2]At the hearing on Defendants' Motion, Plaintiff's counsel explicitly represented that the damages sought are only for those injuries suffered within the United States, resulting from infringements occurring within the United States.

States trademark rights in the United States.  Although the Coco Bongo website might be located in Mexico, and even though the website and its advertisements might be viewable by numerous other countries, it is the availability of the allegedly infringing advertisement within the United States that Plaintiff claims as a violation of the Lanham Act.  Accordingly, viewing the Complaint in the light most favorable to Plaintiff and accepting the Plaintiff's well-pleaded facts as true, this Court finds that Plaintiff has plead violations of the Lanham Act occurring within the United States, giving the Court subject matter jurisdiction over this dispute, and making the inquiry into extraterritorial application of the Lanham Act inapplicable.

### B.  Personal Jurisdiction[3]

In a case where a non-resident defendant challenges the exercise of a court's jurisdiction over him, but where no evidence on the matter is submitted, the plaintiff has the burden of pleading a prima facie case of personal jurisdiction over the moving defendant. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Morris v. SSE Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).  A prima facie case is established in such cases where "the plaintiff alleges sufficient facts in his complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103, 104 (11th Cir. 1982).  District courts must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony.  *Morris*, 843 F.2d at 492.  In the present case, Defendants have provided no affidavits or deposition testimony to refute any of the claims made by Plaintiff in his complaint.  Therefore, as the allegations made by Plaintiff are uncontroverted by the Defendants, this Court takes those allegations as true.

Plaintiff alleges two avenues for this Court to exercise personal jurisdiction over Defendants in this case.  First, under the more traditional approach, Plaintiff alleges that jurisdiction is proper pursuant to Florida Statutes, section 48.193(1)(b), Florida's Long-Arm Statute.[4]  Compl. ¶ 3.

---

[3] Plaintiff's argument in support of this Court's jurisdiction over Defendants is one of specific jurisdiction based on the contacts of the Defendants related to or arising from the alleged Lanham Act violations.  *See* Compl. at ¶ 2; D.E. #24, pgs 7-15.  Although touched on by Plaintiff in footnote 5 of D.E. #24, Plaintiff states that he is not arguing that a general jurisdiction analysis be applied in this case.

[4] Plaintiff also alleged jurisdiction pursuant to Florida Statutes § 49.193(1)(f)(1) in his complaint, but withdrew this basis for jurisdiction in his Memorandum in Opposition to Defendant's motion, D.E. #24 n.3, acknowledging that his intellectual property rights may not be

Second, Plaintiff alleges that jurisdiction over the Defendants is also proper pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure.  *Id.*

### 1.  The "Traditional" Personal Jurisdiction Analysis

A federal court determines whether to exercise personal jurisdiction over a non-resident defendant by conducting a two-part inquiry.  First, the court should determine if there is a basis for asserting personal jurisdiction under the state's long-arm statute.  *Robinson v. Fiarmaco & Bill, P.C.*, 74 F. 3d 253 (11th Cir. 1996); *Madara*, 916 F.2d at 1514.  If the court determines there is a basis, the court must then ascertain "whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Mut. Serv. Ins. Co. v. Frit Indus.*, 358 F.3d 1312, 1319 (11th Cir. 2004) (internal quotations omitted).

### a.    Florida Long-Arm Jurisdiction

Florida Statutes, section 48.193(1)(b),[5] provides that jurisdiction is proper over non-citizens when they have "committ[ed] a tortuous act within the state."  This court must construe Florida's Long-Arm Statute the way the Florida Supreme Court would.  *See Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 199 Fed. Appx. 738, 741-742 (11th Cir. 2006).  The Florida Supreme Court holds that "in order to commit a tortious act in Florida, a defendant's physical presence is not required. . . . [C]ommitting a tortious act  in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002).

––––––––––––––––

considered "property" within the meaning of Florida's Long-Arm Statute.

[5]Fla. Stat. § 48.193(1)(b) states:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from doing any of the following acts:
> . . .
> (b) Committing a tortious act within this state.

Plaintiff argues that the infringing advertisement, transmitted via the Defendants' website, satisfies the Long-Arm Statue as a electronic communication into Florida. To support his argument, Plaintiff relies on two cases. The first is *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223 (M.D. Fla. 2000), which Plaintiff cites for the proposition that "trademark infringement via the internet constituted a tort in the state within the meaning of Florida's long arm statute." Plaintiff's Memorandum in Opposition, D.E. #24, pgs. 6, 7. The second is *Korman v. Kent*, 821 So. 2d 408 (Fla. 4th DCA 2002), which Plaintiff cites for the proposition that Florida's "long-arm statute encompasses conduct where defendant acts outside of Florida, such as when uttering a defamatory falsehood in a foreign state and causing it to be published [in Florida] to the detriment of the plaintiff." Plaintiff's Memorandum in Opposition, D.E. #24, pg. 7. While both of these cases underscore the Florida Supreme Court's holding in *Wendt v. Horowitz*—that a tortious act can occur through the nonresident defendant's communications into Florida—*Wendt* qualifies this proposition by explaining that "the cause of action must arise from the communications." *Wendt*, 822 So. 2d at1260. Accordingly, classifying Defendants' infringing advertisement as an electronic communication does not end the inquiry, because, under Florida's long-arm statute, the communication *must also give rise to the cause of action*.

"Florida courts have long recognized that a cause of action in tort accrues where the injury to the plaintiff first occurs." *Becker v. Hooshmand,* 841 So.2d 561, 562 (Fla. 4th DCA 2003) (citing *Williams v. Goldsmith*, 619 So.2d 330 (Fla. 3d DCA 1993) (tortious interference with contract claim accrued where plaintiff suffered injury by loss of clients); *Walt Disney World Co. v. Leff*, 323 So.2d 602 (Fla. 4th DCA 1975) (personal injury action accrued where injury occurred); *Tucker v. Fianson*, 484 So.2d 1370 (Fla. 3d DCA 1986) (legal malpractice action accrued where asserted negligence impacted plaintiff's economic interest)). Likewise, in the two cases Plaintiff relies on to support long-arm jurisdiction in this case, *Nida Corp.* and *Korman*, the courts exercised their jurisdiction based on the fact that the plaintiff's injury occurred within the state. *See Nida Corp.,* 118 F. Supp. 2d 1223 (the court stated that the plaintiff had established a *prima facie* case for trademark infringement *and* that the *plaintiff was a Florida corporation*); *Korman*, 821 So. 2d at 410 (stating that in the defamatory context, the "statute also encompasses conduct where the defendant acts outside Florida *to directly cause injury or damage a person within this state*.") (emphasis added).

When dealing with disputes alleging trademark infringement, "[c]ase law dictates that injury from trademark infringement occurs in the state where the trademark owner resides." *Full Sail, Inc.*

*v. Spevack*, 2003 U.S. Dist. LEXIS 20631 (M.D. Fla. Oct. 21, 2003); *see also Hartoy Inc. v. Thompson*, 2003 U.S. Dist. LEXIS 3185 (S.D. Fla. Jan. 29, 2003) ("Injury from such [trademark and trade dress infringement] will be deemed to have occurred in the state in which the trademark holder resides. Because Hartoy is a Florida corporation, with its principal place of business in Florida, any injury suffered by Hartoy will be suffered in Florida. Accordingly, subsection (1)(b) of Florida's long-arm statute is satisfied.").

In this case, Plaintiff's injuries for any alleged violations of the Lanham Act would occur in the state where Plaintiff resides, thus giving rise to his causes of action there as well. However, Plaintiff has not alleged Florida residency in the Complaint. In fact, at the hearing on this matter, Plaintiff's counsel could not represent to the Court that Plaintiff was a Florida resident and conceded that, in all likelihood, Plaintiff is not a Florida resident. Accordingly, because Plaintiff's causes of action under the Lanham Act arise somewhere other than Florida, Plaintiff has failed to establish personal jurisdiction against either Defendants GIH or Halabe under section 48.193(1)(b) of Florida's Long-Arm Statute.[6]

### 2. Jurisdictional Analysis Under Rule 4(k)(2)

As an alternative to jurisdiction under Florida's long-arm statue, Plaintiff also contends that Rule 4(k)(2)[7] of the Federal Rule of Civil Procedure is a basis for this Court to assert personal jurisdiction over the Defendants. Compl. ¶ 3. Rule 4(k)(2), referred to as the "national long-arm statute" provides:

> If the exercise of jurisdiction is consistent with the Constitution and law of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general

---

[6]Defendant Noble is not challenging personal jurisdiction.

[7]Rule 4(k)(2) reads:

> (k) Territorial Limits of Effective Service.
>     (2) Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>         (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>         (B) exercising jurisdiction is consistent with the United States Constitution and laws.

jurisdiction of any state.

*Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999).  "Rule 4(k)(2) thus sanctions personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the … long-arm statute of any particular state." *United States SEC v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. 1997) (quoting *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir.1996)).

In a Rule 4(k)(2) analysis, this Court must first determine whether jurisdiction under Florida's Long-Arm Statute fails as a precondition to traveling under Rule 4(k)(2).  *See Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1341 n.2 (S.D. Fla. 2002).  As discussed in section II.B, above, this Court has determined that Defendants are not subject to personal jurisdiction under Florida's Long-Arm Statute.  Defendants argue, however, that Plaintiff bears the burden of demonstrating that, not only does jurisdiction fail under Florida law, but that jurisdiction would fail in every other state, before this Court can resort to exercising jurisdiction under Rule 4(k)(2). Defendants cite to *Home Ins. Co. v. Thomas Industries, Inc.*, 896 F.2d 1352 (11th Cir. 1990), and argue that the Eleventh Circuit has explicitly stated that "the plaintiff has the burden of showing that venue in the forum is proper."  Although, as a preliminary matter, this statement does not appear in *Home Ins. Co.*, that case also offers little help to Defendants because Rule 4(k)(2) was enacted in 1993, three years after the *Home* decision, and the case was not dealing with personal jurisdiction issues, but rather improper venue.

The bulk of cases dealing with Rule 4(k)(2), on the issue of who bears the burden of demonstrating that no other state can exercise personal jurisdiction, hold that it is the *defendant* who must show that: either its contacts with the whole of the United States are constitutionally insufficient, or that there is an alternative state where jurisdiction would be proper.  *See, e.g., United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 40 (1st Cir. 1999) ("If the plaintiff makes out his prima facie case, the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient.").  Judge Easterbrook, when confronted with this issue, came to this well-reasoned and pragmatic conclusion:

> Constitutional analysis for each of the 50 states is eminently avoidable by allocating burdens sensibly. A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there (personal jurisdiction, unlike federal subject-matter jurisdiction, is waivable). If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001). This is an eminently sensible approach, otherwise, requiring the plaintiff to prove that each state lacked jurisdiction would require courts to go through an exhausting 51-point jurisdictional analysis—the 50 States and then the United States as a whole—to determine if Rule 4(k)(2) is applicable. *See Id.*

As stated above, this Court has determined that jurisdiction is not proper under Florida's Long-Arm Statute. Accordingly, this Court will turn to a Rule 4(k)(2) analysis assuming Defendants cannot provide an alternate forum within the United States where they are subject to personal jurisdiction. Defendants have not provided any such forum in their pleadings as of yet, and at the hearing on this matter, Defendants' counsel stated that he could not provide any such alternate forum. Therefore, finding that jurisdiction is not proper under Florida States, section 48.193(1)(b), and further finding no alternate forum provided by Defendants, this Court determines that an analysis under Rule 4(k)(2) is proper.[8]

### a. Specific or General Jurisdiction

Defendants next argue that Rule 4(k)(2) requires a "general jurisdiction" analysis, rather than "specific jurisdiction," citing to *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000) for support. In *Consolidated*, the court stated that "[c]onsiderations of due process require that a non-resident defendant have certain minimum contacts with the forum," noting that, under Rule 4(k)(2), the applicable forum for minimum contacts is the United States. *Id.* at 1291, n.6. The court continued by stating that a specific jurisdiction analysis should be used when a party's activities in the forum arise from or relate to the cause of action in the complaint. *Id.* If a court finds that the alleged aggregate contacts within the United States relate to the plaintiff's cause of action, the question becomes whether a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id. (quoting Hanson v. Denckla,* 357 U.S. 235, 253 (1958))*.* In *Consolidated*, the court ultimately applied a

---

[8]Defendant does not challenge that Plaintiff's infringement claims arise under federal law.

general jurisdictional analysis, only after determining that the complaint alleged a cause of action that did not arise from any of the defendants' alleged contacts with the United States. *Id.* at 1292. Contrary to what Defendants argue here, *Consolidated* does not stand for the proposition that only a general jurisdiction analysis is proper under Rule 4(k)(2). A specific jurisdiction standard is also proper when the alleged wrongs arise from or are related to the alleged contacts in the forum.

> **b.    Minimum Contacts**

Having determined that courts may use a specific jurisdiction analysis when applying Rule 4(k)(2) to personal jurisdiction challenges, this Court must look to the Complaint to see if the alleged contacts by Defendants arise from or relate to the cause of action in the Complaint, and, if so, has Plaintiff alleged sufficient contacts to show that Defendants have purposefully availed themselves of the privilege of conducting activities within the United States as a whole.

Here, the alleged contacts are related to the infringing advertisement. Plaintiff complains that the Defendants promote the Coco Bongo nightclub through the use of the infringing advertisement on its website. Compl. ¶¶ 25, 26. Plaintiff also alleges that Defendants' use Plaintiff's trademarks in a promotional video displayed on the Coco Bongo website and hosted on several other websites. *Id.* at ¶¶ 28-33. In addition to these allegations giving rise to Plaintiff's causes of action, Plaintiff further alleges that:

1.    "Defendants significantly target United States tourists in their promotional efforts for the Coco Bongo nightclub," *id.* ¶ 17;

2.    "Defendants rely heavily on advertising and promoting the Coco Bongo nightclub in Cancun by distributing advertisements within the United States, including through its official internet website www.cocobonao.com.mx," and through which "Defendants' customers can reserve tickets for the Coco Bongo nightclub," *id.* ¶ 18;

3.    "Defendants' website offers the following interactive features under the section entitled 'Interactive' or 'Coco- Interactive': (1) register to become an online member of the website and receive a user name and password . . . ; (2) 'wallpaper,' where the user can download Coco Bongo wallpaper . . . ; (3) 'forum,' . . . ; (4) 'chat,' where users can chat live with each other . . .; (5) 'shows,' where the user can view photographs of various acts . . . and send an e-card to another user's email of a photograph which is sent from the Coco Bongo website server; and (6) 'gallery,'" *id.* ¶ 19;

4.    "Defendants also advertise and promote the Coco Bongo nightclub through business relationships with several travelltourist agencies and tour operators

located in Florida and throughout the United States," *id.* ¶ 20;

5.   "Defendants promote and advertise their Coco Bongo nightclub in the United States by distributing various advertisements and promotional material through U.S. magazines, travel publications, on U.S. companies' websites and on college campuses," *id.* ¶ 21;

6.   "Defendants regularly attend travel trade shows many times throughout the year in Florida and throughout the Unites States," *id.* ¶ 22;

7.   "Defendants rely . . . heavily on advertising and promoting the Coco Bongo nightclub to U.S. college and high school students and other members of their 18-35 year-old target demographic in Florida and throughout the Unites States," *id.* ¶ 23; and

8.   "The Infringing Advertisement and Infringing Video using 50 Cent's image and likeness and the G-UNIT mark have been and are being distributed in interstate commerce in the United States via the internet," *id.* ¶ 38.

These allegation not only show a nexus with Plaintiffs causes of action, but also form a *prima facie* showing of constitutionally adequate minimum contacts for this Court to assert personal jurisdiction over the defendants.  Accordingly, this Court finds that the contacts alleged by Plaintiff arise from or are related to Plaintiff's causes of action, and that these contacts are specific enough to satisfy this Court that Defendants have purposefully availed themselves of the privilege of conducting activities within the United States as a whole, giving this Court  personal jurisdiction over  Defendants.

**C.  *Forum Non Conveniens***

Defendants argue that even if this Court finds both subject matter and personal jurisdiction in this case, the Court should dismiss the case under the doctrine of  *forum non conveniens*.  "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even where jurisdiction is authorized by the letter of a general venue statute."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947).  Under the doctrine of *forum non conveniens*, a district court has the inherent power to decline to exercise jurisdiction even when venue is proper.  *See id.* at 506-07.  To obtain dismissal under the doctrine, "the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."  *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001).  In a *forum non conveniens* analysis "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which

may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1981). *See also La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (noting that district courts shall "weigh[ ] in the balance a strong presumption against disturbing plaintiffs' initial forum choice").[9]

The Court proceeds to apply each element of the *forum non conveniens* analysis to the facts presented in this case.

### 1. Available Adequate Alternative Forum

For *forum non conveniens* purposes, forum availability and adequacy are separate inquiries. *See Leon*, 251 F.3d at 1311. "Ordinarily, [the availability] requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper,* 454 U.S. at 265 n.6. At the hearing on this matter and in their Motion to Dismiss, Defendants represented that they would submit to the jurisdiction of the Mexican courts. In light of these representations, this Court is satisfied that, at a minimum, Mexico is available as an alternative forum. *See Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996) ("Here the defendants agreed to submit to the jurisdiction of an alternative forum (in France), rendering that forum available.").

Although the availability of an alternative forum is satisfied, the Court is concerned with the adequacy of the Mexican judicial system to handle this intellectual property dispute. Plaintiff points out that a "defendant has the burden of persuasion as to all elements of a *forum non conviens* motion, including the burden of demonstrating that an adequate alternative forum is available." *Leon v. Millon Air, Inc*., 251 F.3d 1305, 1311 (11th Cir. 2001). Such persuasion requires that the

---

[9] Defendants rightly point out that the presumption favoring a plaintiff's choice of forum "applies with less force when the plaintiff or real parties in interest are foreign." *Piper*, 454 U.S. at 255. Plaintiff's counsel represented to the Court that Plaintiff is an American Citizen, and Plaintiff also noted so in his Opposition to the Motion to Dismiss. However, Plaintiff is most likely not a citizen of the State of Florida. This distinction might matter, were Defendants requesting a transfer to another district court within the United States, however, Defendants seek to have the case dismissed in the United States and brought in Mexico. This cuts against Defendants' argument that foreign Plaintiffs are entitled to less deference, because, as the Eleventh Circuit explained, before dismissing for *forum non conveniens* "in this Circuit we have long mandated that district courts require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004) (internal quotation omitted).

"defendants demonstrate that the alternative forum offers at least some relief." *Id.* "Implicit in such a conclusion (and in any attending *forum non conveniens* dismissal) is a finding that the foreign jurisdiction is as presently capable of hearing the merits of plaintiff's claim, and therefore as convenient to the parties, as the United States court where the case is pending." *Norex Petroleum, Ltd. v. Access Indus*., 416 F.3d 146, 159 (2d Cir. 2005).

Here, Defendants argue that Mexico is an adequate forum because it "is party to some of the same intellectual property treaties and trade agreements as the U.S." and that "the Mexican trademark act provides protection for trademarks, and injunctive relief and damages." D.E. #31, pg. 17. Defendants offer the Court no evidence of this claim (such as a declaration of a Mexican intellectual property attorney), other than directing the Court's attention to a website article which, in its words, "helps explain the application of the [Mexican Trademark] Act to trademark infringement cases . . . ."[10] D.E. #31, pg. 13 n.12. Even assuming that this website article is competent evidence of the adequacy of Mexican courts for trademark infringement cases, which assumption is tentative at best, the article does not support Defendants. Rather than bolstering Defendants' argument that Mexico is an adequate forum for these types of disputes, the article states that "[i]n contrast to the United States and other industrialized countries, where intellectual property rights are enforced by trial courts, enforcement of patents, trademarks and under certain circumstances, copyrights, is the responsibility of administrative entities such as the Mexican Institute of Industrial Property." The article continues that the Mexican Trademark Act "theoretically appear to permit a party to initiate a civil action. However, in practice this option is never used." Explaining that this is so "because for some practitioners the Mexican judicial system is perceived to be very slow and consequently ineffective for handling complex intellectual property litigation." Additionally, the article states that "there is no private right to injunctive relief for the infringement of copyrights, trademarks, trade secrets or patents," but notes that "this is a debatable issue." The article concludes by noting the "impossibility of obtaining damages, profits and attorney's fees in a procedure carried out by [the Mexican intellectual property enforcement agency]."

This article does not paint a favorable picture of Mexico as an adequate forum for resolving this dispute. That there are "theoretically" civil actions for the ills Plaintiff has complained of, does

---

[10] The website address is: http://natlaw.com/interam/mx/ip/sp/spmxip13.htm#E21E4.

not inspire this Court's confidence that the Mexican forum proposed by Defendants is presently capable of hearing Plaintiff's claims.  Additionally, Plaintiff seeks both injunctive relief and damages in this action, however it is not certain that a private right to injunctive relief is available under Mexico's intellectual property enforcement scheme.  Further, obtaining damages, profits, and attorney's fees may be impossible.  The Court notes that this article was written a decade ago, however it was offered by the Defendants to support their contention that Mexico provides an adequate forum for the Plaintiff's claims.  If the state of Mexico's intellectual property rights enforcement mechanisms have since changed, Defendants have provided nothing to that affect for the Court's consideration.  Accordingly, Defendants have failed to demonstrate to the Court that Mexico is an adequate forum for litigation of this intellectual property dispute.[11]  Because Defendants have failed to persuade this Court that Mexico provides an adequate forum in which Plaintiff can seek redress for his claims, Defendants' motion to dismiss the case under the doctrine of *forum non conveniens* must be denied.

### 2.  Public and Private Interest Factors

Even if Mexico were an adequate forum for this dispute, the public and private interest factors would still favor the Court retaining jurisdiction over this case.

### a.  Private Interest Factors

The private interest factors to be considered include:

> the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of

---

[11]  Plaintiff also argues that Mexican courts are not adequate forums for enforcement of Lanham Act claims, because such claims are inherently territorial.  Plaintiff cites several cases for the proposition that, because of this inherent territoriality, United States courts are the only adequate courts to here Lanham Act claims.  Plaintiff quotes from *McGraw-Hill Cos. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 255 (S.D.N.Y. 2005), which states that "decisions of foreign courts concerning the respective trademark rights of the parties are irrelevant and inadmissible in United States courts hearing Lanham Act claims."  While this may be true when foreign courts have determined the extent of United States trademark protections through the application of their own foreign law, this Court sees no reason why an appropriate foreign court cannot adequately apply the Lanham Act if called upon to do so.  Such questions need not be answered in the present case, as even assuming Mexican courts were willing and able to apply the Lanham Act, the other *forum non conveniens* considerations favor this Court retaining jurisdiction.

> a case easy, expeditious and inexpensive.

*Piper Aircraft,* 454 U.S. at 241 n.6 (internal quotation omitted).  Defendants bear the burden of convincing this Court that the private interest factors "clearly point towards trial in the alternative forum."  *Id.* at 255.  Defendants argue that too heavy a burden exists on them in litigating these claims in the United States, because the location of several witnesses and various items of evidence are located in Mexico.  They also claim that the dispute will involve many contracts or agreements subject to Mexican law and needing translation from Spanish to English.  Because of these issues, Defendants argue that the private interest factors weigh in favor of dismissal.  This Court is not convinced.  First, as Plaintiff points out, the number of witnesses in this case appears to be limited, and include either the individual defendants themselves, or the agents of the Defendants.  These witnesses can easily make themselves available at trial.  Moreover, any testimony evidence required from these sources can be obtained through deposition testimony or letters of rogatory.  *Sun Trust Bank v. Sun International Hotels, Ltd.*, 184 F. Supp.2d 1246, 1264 (S.D. Fla. 2001); Fed. R. Civ. P. 28(b) (taking of depositions in a foreign country).  Second, the only contract that this Court is aware of is some kind of agreement or license referenced, but not produced, by Defendants' counsel in the hearing on this matter.  Even if there are numerous contracts relevant to this dispute, Defendants have failed to make such a showing.  Third, as Plaintiff is suing only for violations occurring in the United States, the evidence of such violations appear available in the United States.  *See, e.g.*, Compl. Exhibits J, K.  Fourth, Plaintiff resides in the United States, and evidence relating to his trademarks, their value, and Plaintiff's damages is here.  Considering these factors, the Defendants have not shown that the balance is strongly in their favor.  *See Gulf Oil*, 330 U.S. at 508 (" [U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

### b. Public Interest Factors

The public interest factors to be considered include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty.

*Piper*, 454 U.S. at 241 n.6 (internal quotation marks omitted).  Defendants main argument as to why

the public interest factors weigh in their favor is based on their contention that Plaintiff is suing for violations of Mexican law occurring in Mexico.  However, as was discussed in section II.A, above, what Plaintiff seeks is the application of United States law for acts occurring within the United States.  If this case were tried in Mexico, the Mexican courts would be faced with the burden of interpreting fairly complex areas of United States law.  This would undoubtedly require a great deal of expense in both time and money, including expert testimony, which might, itself, require the added costs of translation Defendants seek to avoid.  Additionally, the fact that this cases involves a United States citizen, suing for violations of the United States Code occurring within the United States, strongly favors a disposition determined by a United States court.  *See, e.g.*, *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1317-18 (S.D.N.Y. 1995) (when considering the public factors in a trademark dispute, "the interest in keeping localized controversies at home clearly supports keeping this case with [a United States court]").

For these reasons, both the private and public interest factors support Plaintiff's original choice of this domestic forum.  Accordingly, this Court denies Defendants' Motion to Dismiss for *forum non conveniens*, and retains jurisdiction over this case.

### D.  Individual Defendants' Liability

Defendants argue that Plaintiff has insufficiently pled individual liability against any of the Defendants.  The Court disagrees.  Under Rule 8, Fed. R. Civ. P., Plaintiff is only required to plead a short and plain statement of the facts which entitle him to relief.  "[I]n order to prevail on a trademark infringement claim, a plaintiff must show that its mark was used in commerce by the defendant without the registrant's consent and that the unauthorized use was likely to deceive, cause confusion, or result in mistake." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998).  At the motion to dismiss stage in these proceedings, the Court need only determine whether Plaintiff has met the minimal pleading requirements with regard to each defendant, and must make this determination on the face of the pleadings, rather than by evaluating evidence as to each Defendant's actual involvement in the case. *Lifetime Homes, Inc. v. Walker Homes, Inc.*, 2006 WL 889986 (M.D. Fla. 2006).  Here, Plaintiff has alleged that he owns a valid trademark, that "Defendants knowingly and without Plaintiff's authorization, permission or consent" used his trademark, and that such use is likely to confuse or deceive.  Compl. ¶¶ 8, 24, 40.  Plaintiff's pleading meets the requirements of Rule 8, and accordingly, Defendants' motion to dismiss for failing to plead a claim upon which relief may be granted is denied.

### E.  Failure to State a Claim Under Florida Law

Defendants next argue that Plaintiff has failed to state a claim under Florida Statutes, section 540.08 in Count III, and for common law unfair competition and trademark infringement in Count IV.  Defendants argue that Plaintiff has failed to allege that any injury occurred in Florida as a result of any act by Defendants committed in Florida.  First, as stated above, the Court is satisfied that Plaintiff's allegations, taken as true, show that infringing material was made available and viewed in Florida.  Second, that Plaintiff suffered injury in Florida was a crucial factor in the analysis of jurisdiction under section 48.193(1)(b) of Florida's long-arm statute.  However, the same lack of Florida injury is not necessarily fatal to Plaintiff's state law claims at the motion to dismiss stage.[12]

Under Florida law, the elements necessary to support a claim for common-law unfair-competition trademark infringement do not require *actual* injury in the forum to a plaintiff, but instead only require that "as a consequence of the defendant's action, or threatened action, customer confusion of source or as to the sponsorship of the services (or goods) offered, or to be offered, by the defendant is probable (likely) or inevitable."  *See Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1026 (11th Cir. 1989) (setting out the elements for common trade mark infringement as noted in *American Bank v. First American Bank & Trust*, 455 So.2d 443 (Fla. 5th DCA 1984)).  Therefore, Plaintiff's lack of allegation that an actual injury was suffered in Florida cannot defeat his claim.  Defendants offer no case law to support their argument that a Florida injury is required to properly plead a cause of action for a violation of Florida Statute, section 540.08.[13]  Indeed, the only case that appears to speak to this issue, *Acme Circus Operating Co., Inc. v.*

---

[12] As stated above, in footnote 3, this Court has constrained its analysis on the question of *in personam* jurisdiction based on the specific contacts related to or arising from the Lanham Act claims.  Having determined that personal jurisdiction over Defendants for the alleged violations of the Lanham Act is appropriate, the Court need not and does not reach a conclusion as to whether personal jurisdiction would be proper based solely on Plaintiffs claims arising under Florida law.

[13] The only case Defendants cite in support of their argument was in the context of a motion to dismiss for lack of personal jurisdiction, not for failure to state a claim. *See Cal-Mar Industries, inc. v. Wilson Research Corp.*, 442 F. Supp. 796 (S.D. Fla. 1977).  Indeed, as Defendants recognize in their Reply in Support of Motion to Dismiss, D.E. #31, pg. 17, a lack of *in personam* jurisdiction argument is not the same as a failure to state a claim argument. *See, e.g., Watts v. Haun*, 393 So. 2d 54, 56 (Fla. 2d DCA 1981) (noting that while the plaintiffs had pled sufficient allegations to support a tort claim under Florida law, the separate question for jurisdictional purposes was whether the tort had been committed in Florida).

*Kuperstock,* 711 F.2d 1538 (11th Cir. 1983), lends support to Plaintiff's position.  In *Acme*, the case was originally brought in California state court and then removed on diversity grounds to the Central District of California.  *Id.* at 1540.  The case was subsequently transferred to the Middle District of Florida, as a more convenient venue.  *Id.*  A California resident party brought a counter-claim against the Florida resident parties under Florida Statutes, section 540.08.  *Id.* at 1541.  When determining whether California or Florida law should apply, the Eleventh Circuit noted that, although the party bringing the 540.08 claim was not a Florida resident, the infringing activity most likely occurred in Florida, and held that Florida law should apply because the "State of Florida would have a strong governmental interest in insuring that infringements of existing rights of publicity do not occur within its borders."  *Id.* at 1546.  Similarly, in the present case, Plaintiff has made no allegation that he is a Florida resident, however, as the infringement allegedly occurred in Florida, Florida does have some interest in policing the violation of its laws occurring within its borders.

####    F.   Motion to Strike

Defendants seek to have this Court strike paragraphs 14, 15, 16, 25, and 28 from Plaintiff's complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  Rule 12(f) permits a party to move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike, however, are generally disfavored by courts and are considered a "drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Board of Public Instruction*, 306 F.2d 862, 868 (5th Cir. 1962).  Such motions "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.*

Defendants argue that the allegations they object to are unnecessary, because Plaintiff could have made his allegations in a different manner, and in fact do so generally, elsewhere in the complaint.  Defendants also argue that such allegations will both confuse jurors and lead to the admission of evidence that would be otherwise inadmissible.  Plaintiff counters that the allegations are related to his claims in that they are relevant as evidence of "Defendants' intent, willfulness, and target demographic of Defendants promotional efforts."  D.E. #24, pg. 24.  Plaintiff also points out that complaints in civil matters are rarely, if ever, submitted to the jury.  A complaint is not evidence, and the admissibility of any evidence which might prejudice Defendants will be resolved in a later stage of the litigation.  *See McCrae Assocs., LLC v. Universal Capital Mgmt.*, 554 F. Supp. 2d 249, 257 (D. Conn. 2008) ("[B]ecause a complaint is not submitted to the jury, the danger of unfair

prejudice is minimal"); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[O]rdinarily neither a district court nor an appellate court should decide to strike a portion of the complaint--on the grounds that the material could not possibly be relevant--on the sterile field of the pleadings alone.").

This Court finds that Defendants' arguments do not meet the burden of demonstrating that the allegations have "no possible relation to the controversy" or that they "may cause prejudice" to the Defendants.   Accordingly, Defendants motion to strike paragraphs 14, 15, 16, 25, and 28 of Plaintiff's complaint is denied.   *See Agan v. Katzman & Korr, P.A.*, 328 F. Supp. 2d 1363, 1369 (S.D. Fla. 2004) ("[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing.").

## III.   CONCLUSION

For the reasons set forth above, it is hereby

ORDERED and ADJUDGED that  Defendants' Motion to Dismiss and Motion to Strike is DENIED.

DONE in Chambers, Miami, Florida, October 20, 2008.

Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record